THE KANSAS NATIONAL BANK V. E. S. QUINTON.
No. 9239.

1. CASHIER OF BANK — *has power to receive deposit to be paid third person on contingency.* The discounting of commercial paper by a bank, and the receipt of the proceeds on deposit to disburse to a certain person when a certain service is performed, are included within the powers of a bank, and are incidental to the ordinary banking business; and such power may be exercised by the cashier or managing officer of the bank.

2. GENERAL DENIAL — *under, to a count for money had and received, evidence of payment otherwise than by or for defendant, inadmissible.* In an action for money had and received, where the only answer is a general denial, proof of payment by another than the defendant, and not for him or on his account, is not admissible.

3. FINDINGS OF JURY — *conclusive on error if sustained by any competent evidence.* Evidence examined and found to be sufficient to support the verdict and judgment.

*Error from Shawnee Circuit Court.*
*Hon. J. B. Johnson, Judge.*

AFFIRMED.                    OPINION FILED MARCH 6, 1897.

*J. G. Slonecker,* for plaintiff in error.

*Wm. P. Douthitt, David Overmyer* and *Eugene Hagan,* for defendant in error.

JOHNSTON, J.  This was an action brought by E. S. Quinton to recover $3,500 from The Kansas National Bank as for money had and received.  Quinton was engaged by the Topeka Rapid Transit Railway Company to perform legal services, and obtain right of way and some franchises for the Company in the city of Topeka.  J. B. Bartholomew, the president of the company, agreed to pay Quinton $3,500 for the services mentioned.  Quinton demanded that provision be made in advance for the payment of his services, and they went together to The Kansas National Bank

where an arrangement was made, the nature of which is a matter of dispute. Some negotiations were had with L. L. Turner, who was vice president and acting cashier of the Bank, and, Quinton claims, and testified, that an arrangement was made by which $3,500 was placed on deposit in the Bank by Bartholomew which was to be paid by the Bank to him when the work for which he was employed was done. This arrangement was made in April, 1890, and in December, following, when the work was completed for which Quinton was employed, he went to the Bank and demanded the money in accordance with the arrangement previously made.

On the part of the Bank it is contended that no agreement was made whereby it became responsible for the payment of the debt, and it is denied that it ever represented, either by Turner or any one else, that there was $3,500 on deposit in the Bank to be paid to Quinton. Its claim is that, when Bartholomew and Quinton came to the Bank, a note for $3,-500 was discounted and the money was placed on deposit to the credit of Bartholomew, and that the Bank never assumed any obligation to pay money to Quinton.

The main controversy between these parties arises upon the testimony, which is in direct conflict, and this has been determined by the jury in favor of Quinton. The findings of the jury are conclusive in this Court, if there is any competent evidence to sustain them.

3. Findings sustained by any evidence, conclusive.

Without entering upon a detailed review of the testimony, we are satisfied that the evidence offered by and in favor of Quinton fairly tends to support the verdict by the jury that the money was provided and placed in the Bank to be paid to Quinton when the work

was done. It also shows that the transaction was with the Bank, rather than with Turner as an individual. It is true, that Turner did not mention the Bank when he said that the money was up, but all the testimony tends to show that it was a bank rather than an individual transaction. Even the testimony offered in behalf of the Bank is in the same direction. Bartholomew testified that he made the arrangement with the Bank, and had a note discounted there for the purpose of providing money to pay for Quinton's services. That the services were performed by Quinton in accordance with the arrangement, that the amount of $3,500 was to be paid to him for such services, and that that amount was arranged for in the Bank, is beyond dispute. Whether the money was placed there to be drawn by Quinton when the services were performed, or only placed there as a credit to Bartholomew, is the point in controversy; and this, as we have seen, has been determined in favor of the plaintiff below.

Objections were made to statements made between Quinton and Bartholomew, before they went to the Bank, where the final arrangements were made; but as these were merely preliminary, and tended to explain the contingency upon which the money was to be paid over to Quinton, their admission cannot be regarded as prejudicially erroneous.

There is a further contention that the arrangement made for the deposit and payment of the money was one which was beyond the power of the Bank to make. We find nothing substantial in this contention. It was an ordinary bank transaction. There was a discount of the paper of Bartholomew, and a deposit of the proceeds in the Bank to be disbursed by the Bank

1. Cashier can receive deposit payable on contingency.

when certain things were done. The disbursement of a deposit upon a contingency is a matter incidental to the business of banking, and the arrangement was one which the cashier or managing officer was authorized to make.

Complaint is made of the refusal of the Court to allow the Bank to show that payment of Quinton's claim had been made. The petition of the plaintiff briefly alleged that the liability arose for money had and received for the plaintiff at a certain time, and the answer of the defendant was a general denial. It would hardly be consistent in the defendant to deny having received the money, and, at the same time, set up the defense that it had paid the same; but there was in fact no offer or attempt on the part of the Bank to show that it had paid the debt, but it proposed to show that payment had been made by one who was not a party to the action. In the absence of an averment of that fact in the answer, proof that the debt had been paid by Bartholomew, or any one other than the Bank, was not admissible. The answer being a general denial, the plaintiff could not anticipate such a defense as that. He could not anticipate that an effort would be made to prove payment by an outside person, not for or on account of the Bank or at the instance of the Bank. There is no claim that the money had been paid to Quinton by the Bank or any of its officers, or by any one in its behalf, nor that the obligation, which it had assumed when the money was received, was discharged by it. As the pleadings stood, the Court ruled correctly in excluding this testimony. The charge of the Court fairly presented the case to the jury, and we discover nothing in the

2. Evidence of payment inadmissible, when.

48—57 KAN.

record which requires a reversal of the judgment; it will, therefore, be affirmed.

All the Justices concurring.